No. 3-04-0892
Filed January 18, 2007.

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2007

| | | |
|---|---|---|
| The People of the State of Illinois, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, |
| Petitioner-Appellee, | ) ) | Illinois, |
| v. | ) ) | No. 03-CF-364 |
| Dan Alexander, | ) ) | Honorable Daniel J. Rozak, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE LYTTON delivered the Opinion of the court.

Defendant Dan Alexander was charged with two counts of sexual exploitation of a child. He was convicted and sentenced to 180 days in county jail and two years of probation. Additionally, the trial court ordered Alexander to pay a fee for the collection of his DNA. The issues on appeal are (1) whether the State proved that Alexander possessed the requisite criminal intent, or mens rea, for sexual exploitation of a child, and (2) whether the trial court possessed the authority to impose a DNA collection fee. We affirm in part and vacate in part.

The evidence at trial indicated that Alexander had been a neighbor of seven-year-old B.M.R., her nine-year-old sister A.M.R. and their mother. He would sometimes baby-sit the girls for their mother.

B.M.R. testified that, when Alexander was babysitting her at the park, he asked her if she wanted to play with his penis and that "the thing he goes to the bathroom with" touched her cheek once. A.M.R. testified that he would "mess[] with it" and would "go up and down on it" but nothing ever came out of "it." Once, Alexander asked A.M.R. if he could pull his pants down and she said no, so he did not. He made her promise not to tell anyone about the incident. A.M.R. testified that Alexander never asked her to touch him, and he never touched her.

Detective Rob Plutz testified that he interviewed Alexander. During the interview, Alexander stated that he did not recall masturbating in front of the girls, but if he did, he must have been "smashed," and he was sorry. In his testimony, Alexander denied ever making this statement to Detective Plutz. However, Alexander admitted that he had drinking problems in the past. He had a prior DUI conviction and had been through a recovery program called "Stepping Stones" to help him combat his alcoholism.

2

Alexander maintained that he never exposed himself to the girls but that once, they pulled down his pants; he yelled at them but, at their request, did not tell their parents. Alexander's ex-girlfriend's twenty-one-year-old daughter corroborated his testimony about this incident.

A jury found Alexander guilty of two counts of sexual exploitation of a child. Alexander was sentenced to 180 days in jail and two years of probation. He was also ordered to pay a $10 collection fee for mandatory DNA testing and genetic marking. His motions for a new trial and a reduction in sentence were denied.

## I. Reasonable Doubt

Alexander argues that the State failed to prove that he acted for the purpose of his sexual arousal or gratification. Sexual exploitation of a child occurs when "[a]ny person *** in the presence of a child *** exposes his or her sex organs, *** for the purpose of sexual arousal or gratification of such person or the child." 720 ILCS 5/11-9.1(a)(2) (West 2002). When faced with a challenge to the sufficiency of the evidence, we determine whether, after reviewing all of the evidence in the light most favorable to the State, any rational trier of fact could have found the elements of the crime proven beyond a reasonable doubt.

3

*People v. Collins*, 106 Ill. 2d 237, 261, 478 N.E.2d 267, 277 (1985).

Alexander's argument relies on A.M.R.'s testimony that nothing came out of Alexander's penis; thus, he argues that "sexual gratification" was not proven beyond a reasonable doubt. Alexander seems to assume that the term "sexual gratification," as used in 720 ILCS 5/11-9.1(a)(2), has a technical or biological meaning that eluded the jury in their deliberations. However, the term possesses no restrictive legal definition. We believe that a jury of twelve can determine the meaning of the term "sexual gratification" upon "fair and open deliberations." See *Jenkins v. State*, 424 N.E.2d 1002, 1004 (Ind. 1981).

Moreover, sexual gratification may be proven by circumstantial evidence. *In re Donald R.*, 343 Ill. App. 3d 237, 240, 796 N.E.2d 670, 673 (2003). In *Donald R.*, a six-year-old child alleged that respondent showed "his private part" to her and made her touch it. The appellate court found that though there was only circumstantial evidence regarding the respondent's sexual arousal or gratification, "it was not inherently implausible or unreasonable for the trier of fact to infer from the circumstantial evidence that the sixteen-year-old [respondent] exposed his penis to the

4

six-year-old victim for the purpose of the [respondent's] sexual gratification or arousal." Donald R., 343 Ill. App. 3d at 244, 796 N.E.2d at 676.

Here, A.M.R. and B.M.R. testified that Alexander exposed himself to them, masturbated in front of them, and touched B.M.R. inappropriately. Even considering A.M.R.'s testimony that nothing came out of Alexander's penis, it is not "inherently implausible" that a rational trier of fact, confronted with this evidence, could have found that there was sufficient proof that Alexander's sexual gratification was proven beyond a reasonable doubt. Accordingly, we affirm Alexander's conviction of two counts of sexual exploitation of a child.

## II. DNA Collection Fee

Next, Alexander argues that the trial court exceeded its statutory authority in ordering him to pay a fee for the collection of his DNA. We consider questions regarding statutory authority de novo. In re K.C., 325 Ill. App.3d 771, 776-777, 759 N.E.2d 15, 20-21 (2001).

The State advances three arguments supporting the imposition of the fee. First, the State contends that Alexander waived his challenge to the fee because he did not object to the collection fee in the trial court. However,

5

"[w]here a court*** exceeded its statutory power to act, any resulting judgment is void and may be attacked at any time." People v. Raczkowski, 359 Ill. App. 3d 494, 497, 834 N.E.2d 596, 599 (2005). Defendant has not waived this issue.

Second, the State argues that the fee is a proper cost levied on the defendant. "[S]tatutory provisions regarding costs must be strictly construed." People v. Fales, 247 Ill. App. 3d 681, 682, 617 N.E.2d 421, 422 (1993). The statute states that, "in addition to any other disposition, penalty, or fine imposed, [the defendant] shall pay a [DNA] analysis fee of $200." 730 ILCS 5/5-4-3(j) (West 2004). It does not provide for the imposition of additional fees that are not already otherwise authorized, such as fines, court costs or costs of prosecution. People v. Hunter, 385 Ill. App. 3d 1085, 1096, 831 N.E.2d 1192, 1199 (2005). Nothing in the statute authorizes the imposition of a DNA collection fee. People v. McAfee, ___ Ill. App. 3d___,___, 853 N.E.2d 107, 109 (2006). Thus, the trial court exceeded its power under the statute when it ordered Alexander to pay $10 for the collection of his DNA.

Third, the State argues that Will County Administrative Order 03-31 granted the trial judge specific authority to impose the $10 collection fee. The State contends that the

6

Will County order was properly entered pursuant to subsections (a) and (b) of Supreme Court Rule 21 (94 Ill. 2d R. 21), which provides:

> "(a) Appellate Court and Circuit Court Rules. A ***majority of the circuit judges in each circuit may adopt rules governing civil and criminal cases which are consistent with these rules and the statutes of the State***.
>
> (b) General Orders. The chief judge of each circuit may enter general orders in the exercise of his general administrative authority, including orders providing for assignment of judges, general or specialized division, and times and places of holding court." 94 Ill. 2d R. 21(a) and (b).

Initially, the State argues that "[r]ule 21(a) should be properly interpreted as requiring only that each circuit's rules be consistent with statutes that do not unduly infringe upon the 'judicial power,'" citing People v. Joseph, 113 Ill. 2d 36, 46-47, 495 N.E.2d 501, 506 (1986). In Joseph, our supreme court struck down a portion of the Post-Conviction Hearing Act (Ill. Rev. Stat., 1984 Supp., ch. 38 par. 122-1 et seq.) that restricted post-conviction judicial assignments to judges who had not been involved in the original proceeding. Joseph, 113 Ill. 2d at 46, 495

7

N.E.2d at 506. The court found the statute unconstitutional because it unduly encroached upon the judiciary's power to administer the court system.  Joseph, 113 Ill. 2d at 48, 495 N.E.2d at 507.

The State's argument, however, would turn Joseph on its head.  The issue here is not whether legislation appropriates judicial power, but whether the circuit court order infringes on the legislative power.  The order, in effect, raises revenue for Will County by directing convicted defendants to provide reimbursement for the cost of mandatory DNA testing. "[T]he question of costs which are to be allowed the successful party and the items of expense which are to be included therein is a question to be determined by the legislature."  See Ritter v. Ritter, 381 Ill. 549, 553-554, 46 N.E.2d 41, 43-44 (1943).  The fee in this case is not a cost authorized by statute.  Thus, under the order, the fee is an unconstitutional infringement on the legislative power rather than a valid exercise of judicial power.

The State also claims that Rule 21(b) authorizes the order.  However, the order does not provide for the "assignment of judges," nor does it delineate "the times and places of holding court."  94 Ill. 2d R. 21(b).  Further,

8

the chief judge's general administrative authority under Rule 21(b) cannot appropriately encompass or purport to exercise a power so closely akin to the revenue raising power of the legislature. See Ritter v. Ritter, 381 Ill. 549, 553-554, 46 N.E.2d 41, 43-44 (1943). Therefore, the order exceeds the powers granted to the chief judge under Rule 21(b).

Order 03-31 violates the separation-of-powers clause and is void. (Ill. Const. 1970, art. II, §1.) For the above stated reasons, the DNA collection fee is vacated.

The judgement of the circuit court of Will County is affirmed in part and vacated in part.

Affirmed in part; vacated in part.

LYTTON, PJ., with SCHMIDT, J., concurring and CARTER, J., specially concurring.

CARTER, J., specially concurring.

I concur with the majority as to the issues raised but write separately on the need for the legislature to amend the statute requiring Genetic Marker Group (DNA) Testing (730 ILCS 5/5-4-3 (West 2004)). The legislature should grant trial courts the authority to impose on defendants the cost of DNA collections. People v. Hunter, 358 Ill.App.3d 1085, 1097, 831 N.E.2d 1192, 1201 (2005). At present, the legislative specimen submission requirements make county government, in certain circumstances, responsible for

offender compliance and, as such, represents an unfunded mandate on local government. Specimens collected for the Illinois State Police Laboratory have local cost implications which the legislature, in the exercise of its prerogative, should remedy.